U.S. Embassy in the Philippines United States What do you say to the argument that the explanatory notes reference to cyclic amides includes compounds that do not seem to fit within the definition of an amide given by the Court of International Trade and supported by you? Am I right that some of those compounds are not amides as you define them? First, as an initial matter, we're talking about an eight-digit statutory subheading. If you would please answer the question. Are some of them not within the definition of amide? Some of them do attach compounds that are other than alkyl or aryl radicals. Which sounds like it's inconsistent with your definition. Is it not? It is not inconsistent with our definition because we are not defining the entire heading 2924. This term amide is an eight-digit sub-subheading under acyclic amides. So the cyclic amides that are referenced in the explanatory notes do not illuminate the distinction between an amide and other, which are the two competing eight-digit subheadings that the trial court construed. So in certain contexts, can amides be referred to to encompass a universe where products attach compounds other than aryl or alkyl radicals to the amide functional group? Yes, sometimes that distinction is irrelevant, but it's not irrelevant here. And it's not irrelevant because Congress identified that distinction. Can you explain to us the distinction and how that relates to the fact that cyclic amides and amides are in different subheadings? Sure. May I direct your attention to page two of our brief, which is the excerpt for the tariff schedule? And the tariff schedule, because this is really what this case is about. It's a classification case. And in terms of authority, which has greater authority, the EN or the actual plain language or the HTS? The HTS-US is statutory. It's binding. The explanatory notes provide interpretive guidance. So what the statute provides is under heading 2924, carboxy amide function compounds, amide function compounds of carbonic acid. The signature functional group that appears in every single compound in heading 2924 is the amide functional group, which is reflected on page five. Then under that main heading, there are two categories. There's a category for acyclic amides, including acyclic carbamides and their derivatives, salts thereof. And that's where everyone agrees that ATBS falls. Then there are three other choices. Two of the statutory six-digit subheadings refer to specific compounds, and then there's other. So that other refers to all other acyclic amides, including acyclic carbamides and their derivatives, salts thereof. So if I understand correctly, these subheadings 10, 20, and 30, these are all carbon and hydrogen in the R position. Is that correct? In which ones? 10, 20, and 30. So in the statistical suffixes? Yes. Okay, in the statistical suffixes, which are not law, which are not part of the statute, those do all attach alkyl or aryl radicals to the nitrogen. Yes. So we have a distinction between amides and their derivatives. So Congress recognized the distinction. And then subheading note one counsels us that when there is a residual subheading, then derivatives of that particular compound must be classified in the other subheading. That's the analysis that the trial court engaged in, and that's the correct analysis. Let me go back to your original response to my question about the explanatory notes on cyclic amides. Are you saying, in effect, that the term amides, as it is used in 29-24-1911, has a different definition from the term amides as used, for example, in 29-24-21, when there's a reference to cyclic amides? The term amides that we're concerned with in this case is the one at 29-24-1911, right? Yes. Now, if I understood your response to me, you were saying, well, with respect to that term, the definition that the CIT employed is correct. But I thought I heard you say that with respect to the term amide as it is used in 29-24-21, which deals with cyclic amides, a different definition of the term amide would be applicable. Is that right? No, that's not necessarily what we're saying. The difference between 29-24-19, which refers to the acyclic amides, has an eight-digit subheading amides and other. There's no comparable, analogous, eight-digit subheading that has amides and other under the cyclic category from which we can draw some sort of analogy. So what we do is we go back to the explanatory notes. And also to follow up with your question about the explanatory notes, there's one important point that we haven't mentioned so far. On appendix 12-54, there's a specific reference to halogenated, sulfonated, nitrated, and nitrosated derivatives and combinations thereof. And it specifically recognizes a scenario where one or more hydrogen atoms in a parent compound are replaced with a sulfyl group, which is SO3H. And in those contexts, that compound is a sulfonated derivative. And that's what we have here. We have a hydrogen that's been replaced by a sulfyl group. And the explanatory notes counsel that that type of compound is a sulfonated derivative. So what we have is a sulfonated derivative of an acyclic amide. But where I think you were going in response to my question earlier was to say, if I understand where you were going, is to say that cyclic amides, which doesn't have an other attached to it, includes the derivatives. Is that right? It's cyclic amides and their derivatives. That's what the statute says. So it includes both. But the amides themselves, the problem with saying, well, the amides include their derivatives, is it says and their derivatives. So the amides must not include amide derivatives, right? The term amides can't include the derivatives if you then follow it by saying and their derivatives. In this statute, there's a distinction. Under certain circumstances, there might not be a relevant distinction between an amide and an amide derivative because they both contain the amide functional group. The issue is everything. Can you understand why I'm having trouble with your answer? What I'm trying to get to is are you saying that the term amide in the reference to the cyclic amides is broader than the term amide that's used in 2924, 1911? Because that was what I understood you to be saying as the explanation for why the explanatory note has cyclic amides that include what, under your definition, would be derivatives. If I understand your question correctly, it would be fair to say that 2924, 21 does include compounds that attach other than alkyl or aryl radicals at R2 and R3. And in fact, you're saying more than that. I think you're saying that the term amide in that section includes those compounds that include things other than alkyl and aryl to the R2 and R3, correct? That's not necessarily correct because that distinction between cyclic amides and their derivatives are still there. And all of the exemplar compounds that Kemptall cited are specifically provided for by name. So Congress made that determination about those particular compounds and how they should be classified. We don't have the benefit of that with respect to 2924, 1911, and 1980, which are the only two statutory subheadings that are at issue in this case. The court didn't make a declaration about what the term amides means. If you describe everything in heading 2924, you only describe this very specific statutory subheading. And the court shouldn't construe that so it would subsume the entire heading. If you say that anything and make no distinction between amides and their derivatives, then potentially anything would fall within 2924, 1911. But there's another category, so there's a distinction with a difference. Would you agree that the structural descriptions in the explanatory notes of secondary amides and tertiary amides are just flat wrong? No, that's absolutely correct. There's nothing wrong about that. CO twice NH and CO thrice N are accurate descriptions of secondary amides and tertiary amides? I'm reading from the middle of, this is appendix 1264. It's the place where the explanatory note says amides are compounds which contain the following characteristic groups, primary, secondary, and tertiary. I'm sorry, what part of that have you identified as incorrect? Secondary amide as being CO twice NH and tertiary amide as being CO three times N. Perhaps I'm not as familiar with how that would appear in a structural diagram where I could say... Well, I don't know where you get three COs in a tertiary amide. A tertiary amide is something in which the H has been substituted for by an alkyl group, right? That's correct. I see what you mean. Before I concede anything, I'd want to confer with my agency counsel about the science. But I think the point is that when you have an amide functional group, you have the R1, which is attached to the carbon, and then you have R2 and R3, which are attached to the nitrogen. That doesn't look very much like this. I understand what you're saying. I do understand that. But I think the text is the important point. And even if what you said was true, it doesn't help Chemtel. And it doesn't substitute the hydrocarbons. But it doesn't sort of undermine some confidence in the explanatory note. I can understand that. I think that the second portion where it says the hydrogen groups may be substituted by alkyl or aryl radicals, in which case the products are N-substituted amides, that is true. And they can be substituted by other groups also. They're just not N-substituted amides. They're derivatives of amides. And they would fall within the other category. Well, I also identified that error I'm talking about. Or I should say my clerk did identify that error. Maybe you should just report that back to CBP. They need to change that and correct that error. But the rest of the text, is that incorrect? The rest of the text is accurate. Okay. Anything further? Just take a moment. No, you have a minute left. Just a final issue. There's an allegation that we've attacked their textbooks and their sources. The truth is we've relied on the textbooks that Chemtel cites. And they uniformly reflect the definition of amide that we Is there any textbook or dictionary citations that support their definition of the amide? That support the United States? That supports Chemtel's? No, and if there were, it would be front and center of their brief and reply brief. The discussion that I had with opposing counsel, your opposing counsel, about the lactam ring and the penicillin, I understood it was your position that the lactam ring is in fact an amide, but it does not mean that that does not make penicillin an amide. Is that your position? Well, a lactam ring contains an amide functional group. And what's actually noteworthy about lactams is that they're provided for, not only is penicillin provided for under a separate heading, lactams are provided for under 2933 of the tariff schedule. So the textbooks provide guidance, but it's really the tariff schedule that's controlled. But your basic submission is that penicillin is not an amide. Our submission is that it contains an amide functional group. Are you saying penicillin is an amide or not? You're saying it's not, right? Our argument is not necessarily whether something is or isn't an amide, it's whether or not something falls within the eight-digit statutory subheading for amides or whether it falls within its statutory subheadings for other because it's a derivative. So in certain contexts in the laboratory, yes, maybe somebody could call it an amide, but for the purpose of classification, you wouldn't classify penicillin in 2924 and 1911. It contains an amide functional group that's undisputed. Let me ask just one more question, if I may, about the ten-digit issue. If I understand your argument, it is that the way you deal with, and correct me if this is a misunderstanding, but my understanding was the way you deal with the ten-digit argument is that you start at 2924 and you're dealing with acyclic amides and their derivatives. Then you go down to, you find that it's not, ATBS is not, I'm not going to pronounce, try to pronounce these, meprobamate, fluoracetamide, and therefore it must be other. Within the category of other, you have amides and other. It is not an amide as you define it because it has something other than an aryl group in the R2 and R3, and therefore your choice is other, and that's why you put it in other. So you never get to the acrylamide, which is two digits farther down in the chain, so that you never have occasion to get to the other that's attached to the ten digits. Is that essentially your argument? That is our argument. Okay. Okay. Thank you, Mr. Wolf, very much. Thank you. Mr. Nicely, you've got two minutes here. Thank you, Your Honor. The government has no answer for our argument, our point, that the cyclic amide examples in the EN 2924 disprove the court and the government's position as to the definition of an amide. Effectively, they've admitted that there are examples of amides out there that are cyclic that don't meet the definition. It's critical that we point out in this context that if you look at the EN and look at what the court used to define what is an amide, they focus on the sentence that says the hydrogen of the NH2 or NH groups may be substituted by alkyl or aryl radicals. Aryl radical, by definition, means there's a ring. It means it's cyclic. So the very definition that the court relies upon and the government relies upon recognizes that the definition applies to both acyclic as well as cyclic amides. No question about that. Penicillin, I refer you back again that penicillin, if you read Wade the paragraph under where they have the picture of penicillin, it does refer to it as amides. It references it as an amide. So I would take you back there again. I would also like to point out that the government is taking the position that anything that doesn't meet that strict definition of an amide but has an amide functional group is a derivative of an amide. That takes this notion of the chalkboard and eraser approach to creating derivatives to a whole new level. That's not what the case HORN stands for. It's not possible, as we've shown, as our experts showed. It's not actually possible, as I mentioned earlier, to go from acrylamide to ATBS. Acrylamide actually comes from acrylonitrile, as does our product. So the notion that you... I thank both counsel in case...